UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEE ANN DAVIS,                                    Case No. 09-12505

            Plaintiff,                            Denise Page Hood
v.                                                United States District Judge

COMMISSIONER OF                                   Michael Hluchaniuk
SOCIAL SECURITY,                                  United States Magistrate Judge

            Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 18)

I.    **PROCEDURAL HISTORY**

      A.    Proceedings in this Court

      On plaintiff filed the instant suit seeking judicial review of the

Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Denise Page

Hood referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits.  (Dkt. 3).  This matter is currently before the Court on

cross-motions for summary judgment.  (Dkt. 15, 18).

      B.    Administrative Proceedings

      Plaintiff filed the instant claims on August 16, 2006, alleging that she

became unable to work on January 1, 2006. (Dkt. 13, Tr. at 77-82). The claim was initially disapproved by the Commissioner on November 8, 2006. (Dkt. 13, Tr. at 35). Plaintiff requested a hearing and on January 26, 2009, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Yvonne K. Stam, who considered the case *de novo*. Plaintiff amended her alleged onset of disability date to April 30, 2006, because that was the date on which she stopped working. (Dkt. 13, Tr. at 21-22). In a decision dated March 6, 2009, the ALJ found that plaintiff was not disabled. (Dkt. 13, Tr. at 8-17). Plaintiff requested a review of this decision on March 11, 2009. (Dkt. 13, Tr. at 5-7). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, Dkt. 13, Tr. at 4), the Appeals Council, on May 20, 2009, denied plaintiff's request for review. (Dkt. 13, Tr. at 1-4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED**.

## II.     FACTUAL BACKGROUND

A.     ALJ Findings

Plaintiff was 43 years of age at the time of the most recent administrative hearing.  (Dkt. 13, Tr. at 77).  Plaintiff's relevant work history included approximately seventeen years as a secretary, bill collector, and nurse's aide (Dkt. 13, Tr. at 109).  In denying plaintiff's claims, defendant Commissioner considered chronic back pain secondary to history of scoliosis and fusion as a possible bases of disability.   (Dkt. 13, Tr. 13).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since April 30, 2006.  (Dkt. 13, Tr. at 13).  At step two, the ALJ found that plaintiff's impairment was "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform her previous work as a nurse's aide and a bill collector.  (Dkt. 13, Tr. at 16).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the

national economy.  *Id.*

B.  <u>Medical Evidence</u>

The Commissioner provides an extensive description of the medical evidence in the record, which is recounted herein.  In January 2006, Dr. Theisen wrote a letter to Dr. Dewyer, Plaintiff's family doctor, in which she reported that Plaintiff had two surgeries when she was a teenager to correct scoliosis.  (Tr. 205).  She stated that four years previously, plaintiff had a spinal fusion from L3 to S1 with a bone graft, osteotomy cage, and screws at L4-5 and L5-S1.  (Tr. 205).  Dr. Theisen noted that Plaintiff had been receiving various pain injections from Dr. Marcovitz for the last several years.  (Tr. 205).  Dr. Theisen reported that during the most recent appointment that plaintiff complained of new pain occurring across her back and down her right leg.  (Tr. 205).  Plaintiff stated that she had difficulty working with the pain and that it was aggravated by both sitting and standing.  (Tr. 205).  Plaintiff reported that she felt best while lying down.  (Tr. 205).  On examination, plaintiff walked normally, stood leaning to the right, displayed mild tenderness to touch across her lumbar spine, and had normal leg strength and reflexes.  (Tr. 206).  Dr. Theisen noted that a recent lumbar spine x-ray revealed spinal fusion hardware from L3 to S1 and scoliosis of the thoracolumbar junction.  (Tr. 182, 206).  Dr. Theisen opined that plaintiff's left lower extremity pain was radicular in nature, but its cause was unclear.  (Tr. 206).

Dr. Theisen ordered an MRI and prescribed Vicodin (pain medication), Motrin (a non-steroidal anti-inflammatory drug), and Flexeril (a muscle relaxant). (Tr. 206).

An MRI of plaintiff's lumbar spine the next day revealed that plaintiff's spine contained surgical hardware including screws and rods from L3 to S1 and interbody fusion implants in the L4-L5 and L5-S1 disc spaces. (Tr. 169). It also revealed extensive spinal fusion with normal vertebral alignment, no lumbar disc herniation, and no caudal sac stenosis. (Tr. 169). Later that month, Dr. Theisen reviewed plaintiff's MRI and records from Dr. Marcovitz and recommended caudal injections for her left lower extremity pain, continued her on Flexeril and Vicodin, and prescribed Lyrica (neuropathic pain medication). (Tr. 203).

Plaintiff presented to Dr. Marcovitz in February 2006 and reported increased lower back pain with radiculopathy symptoms, tenderness in the lumbar spine at areas where hardware had been inserted, and headaches. (Tr. 166). Dr. Marcovitz performed a caudal epidural injection and lumbar and cervical trigger point injections. (Tr. 166). Plaintiff reported to Dr. Theisen in March 2006 that the injections performed by Dr. Marcovitz did not improve her radiating back pain; Dr. Theisen continued her medications. (Tr. 201). Plaintiff returned to Dr. Theisen in April 2006 with complaints of unbearable lower back pain radiating either to the right or left. (Tr. 198). Plaintiff stated that her pain was more right-sided radiating down her hip and buttock, whereas it previously involved her left side more. (Tr.

198).  Plaintiff reported difficulty sitting or standing and increased pain with

bending or sitting.  (Tr. 198).  On examination, plaintiff displayed pain on flexion

and extension in her right back and buttock and

had a positive sitting straight leg raise test on the right.  (Tr. 198).   She was able to

get onto and off of the examination table and had full distal strength.  (Tr. 198). Dr.

Theisen questioned whether plaintiff had discogenic pain, managed her

medications, and recommended physical therapy.  (Tr. 198).  Plaintiff attended

several physical therapy sessions in April and May 2006.  (Tr. 155-64).

Plaintiff presented to Dr. Marcovitz in May 2006 for a caudal epidural

injection and trigger point injections in her lumbar and cervical spine.  (Tr.

151-53).  Plaintiff reported increased lower back pain radiating to her right foot

with numbness in her thigh and occasional sensations that her leg was giving out

(Tr. 151).  Plaintiff also reported increased neck pain with headaches.  (Tr. 151).

On examination, plaintiff displayed multiple trigger points in her neck and lower

spine.  (Tr. 152).

Plaintiff presented to Dr. Theisen later that month and complained of

significant pain on the right side of her back with pain, numbness, and paresthesias

down her left leg.  (Tr. 196).  Plaintiff stated that she had been off of work and that

she was able to take medication, use ice and heat as needed, and lie down at will

(Tr. 196).  Plaintiff reported no improvement with steroid injections or physical

Report and Recommendation
Cross-Motions for Summary Judgment
*Davis v. Comm'r*; Case No. 09-12505

therapy.  (Tr. 196).  On examination, plaintiff displayed reduced Extensor Hallucis

Longus (EHL) strength in her right foot and decreased hip strength.  (Tr. 196).

Plaintiff had a positive seated straight leg raise test on the right and buttock pain on

supine straight leg raising.  (Tr. 196).  Plaintiff also had reduced sensation in a

right S1 distribution.  (Tr. 196).  Dr. Theisen continued

plaintiff's medication, ordered an EMG, and prescribed Ambien (a sleep aid).  (Tr.

197).

In June 2006, plaintiff presented to Dr. Theisen with continuing complaints

of significant right back pain radiating down to her right heel.  (Tr. 180).  On

examination, plaintiff ambulated normally, was able to heel and toe walk with

some difficulty, displayed reduced strength on the right, and demonstrated a

positive sitting straight leg raise on the right.  (Tr. 180).  Dr. Theisen performed

nerve conduction studies and an EMG and opined that Plaintiff may have mild

right S1 radiculopathy.  (Tr. 180).  Dr. Theisen recommended that Dr. Marcovitz

perform an S1 injection, which he did less than a week later.  (Tr. 148, 180).

Plaintiff returned to Dr. Theisen two weeks later and reported that the S1

injection did not help.  (Tr. 189).  On examination, plaintiff displayed weakness in

her right EHL and ankle with a positive right sitting straight leg raising test.  (Tr.

189).  Dr. Theisen scheduled an MRI.  (Tr. 189).  The MRI revealed no significant

changes when compared with the January 2006 MRI and Dr. Theisen referred

Plaintiff to Dr. Geiger.  (Tr. 146, 188).  Dr. Geiger wrote a letter in July 2006 in

which he described a recent appointment with plaintiff.  (Tr. 178-79).  Dr. Geiger

reported that plaintiff complained of back pain, tail bone pain, and pain in her right

leg. (Tr. 178).  He noted that plaintiff was taking Flexeril (a muscle relaxant),

Vicodin, Mortin, and Ambien.  (Tr. 178).  On examination, plaintiff had pain to the

touch across the lumbosacral junction and over the sacroiliac (SI) joint. (Tr. 178).

Plaintiff had a limited range of motion, but straight leg raising tests were negative

bilaterally.  (Tr. 178).  Dr. Geiger reported that a recent MRI and an x-ray showed

no neurological impingement or anything to explain her leg

symptoms.  (Tr. 145, 178).  Dr. Geiger stated that the only abnormality he

observed was some arthrosis (a type of degenerative joint disorder) in the SI joint.

(Tr. 178).  Dr. Geiger opined that Plaintiff had chronic pain unrelated to any

underlying spine condition and suggested a multidisciplinary approach to assess

her pain.  (Tr. 178-79).

Plaintiff presented to Dr. Theisen in August 2006 with continuing

complaints of back pain with tingling and numbness radiating down her right leg as

well as worsening headaches.  (Tr. 186).  Plaintiff reported that she was taking

Vicodin more often, but that it was not helping, and that she had stopped taking

Lyrica.  (Tr. 186).  Dr. Theisen prescribed Percocet (pain medication).  (Tr. 186).

Plaintiff reported to Dr. Theisen a month later that Percocet helped her sleep and

Report and Recommendation
Cross-Motions for Summary Judgment
*Davis v. Comm'r*; Case No. 09-12505

reduced her right leg pain.  (Tr. 184).  In October 2006, plaintiff presented to Dr.

Theisen and reported that medication took "the edge off her pain"and that, over the

last week, she had more left back and buttock pain as well as worsening headaches.

(Tr. 298).  Dr. Theisen noted that she would order epidural steroid

injections and cervical trigger point injections if plaintiff's left leg symptoms did

not improve.  (Tr. 298).  Later that month, Dr. Marcovitz performed bilateral S1

epidural steroid injections and trigger point injections to a right cervical muscle

and to her bilateral paraspinal muscles.  (Tr. 276).

In December 2006, plaintiff reported to Dr. Theisen that the steroid

injections improved her left leg symptoms and that the symptoms were only

intermittent.  (Tr. 295).  Plaintiff stated that her right leg pain was continuing and

requested a different pain medication.  (Tr. 295).  On examination, plaintiff had a

normal gait, was able to heel and toe walk, was restricted in lumbar flexion and

extension, and displayed aggravated symptoms on a sitting straight leg raise test

(Tr. 295).  Dr. Theisen replaced plaintiff's Percocet with OxyContin (pain

medication).  (Tr. 296).

Later that month, plaintiff presented to Dr. Silverman, a pain specialist, for

evaluation of her headache and neck pain.  (Tr. 268-69).  On examination, plaintiff

displayed normal reflexes, decreased strength in her triceps and in a hand muscle,

and decreased sensation in a finger on her left hand.  (Tr. 269).  Plaintiff had a

reduced cervical range of motion and tenderness over her upper cervical facets and over her greater occipital nerve. (Tr. 269). Dr. Silverman noted that plaintiff had symptoms suggestive of left C7 radiculopathy and ordered an MRI of her brain and cervical spine. (Tr. 269). Dr. Silverman reviewed plaintiff's head MRI and reported in January 2007 that it was essentially normal. (Tr. 263). He noted that her cervical MRI showed upper thoracic scoliosis and a disc osteophyte protrusion causing distortion of the left C7 nerve root sleeve and probably to the left C6 and C8 nerve root sleeves. (Tr. 263). Dr. Silverman prescribed Pamelor and Corgard for plaintiff's headache pain and recommended that she have an EMG of her left arm. (Tr. 263).

Plaintiff presented to Dr. Theisen later that month and reported increased left leg pain during December. (Tr. 293). On examination, plaintiff displayed a normal gait with increased right leg pain when heel walking and decreased left arm strength with numbness on reaching overhead. (Tr. 293). Dr. Theisen recommended an epidural steroid injection, which plaintiff reported had helped in the past, and a left arm EMG. (Tr. 293). Dr. Theisen conducted the EMG ten days later, which revealed a very mild left median mononeuropathy (disease of a single nerve) and very mild left ulnar mononeuropathy across the elbow. (Tr. 290). Dr. Theisen opined that if there was a radicular component to plaintiff's condition, it was not severe enough to show up on the EMG. (Tr. 290). Plaintiff returned to

Dr. Silverman in February 2007 and reported that the headache medication did not improve her symptoms. (Tr. 256). On examination, plaintiff had decreased range of cervical motion, marked tenderness over the right C2-C3 facet joint, and reduced deep tendon reflexes in her arms, but with normal sensation. (Tr. 256). Dr. Silverman managed plaintiff's headache medication and scheduled a right C2-C3 cervical facet joint block. (Tr. 256-57). Dr. Silverman noted that he would consider a right C2-C3 facet joint rhizolysis (surgical section of a nerve root) if the facet joint block was effective. (Tr. 257). Dr. Silverman performed the facet joint block later that month. (Tr. 247).

In March 2007, Dr. Silverman noted that plaintiff had reported excellent relief with the facet joint block and performed a right C2-C3 cervical facet joint rhizolysis. (Tr. 232). Later that month, plaintiff presented to Dr. Theisen for a follow-up appointment and reported that she still experienced good days and bad days and that for the past few weeks she had severe pain in her tail bone radiating down the buttock and both legs. (Tr. 288). Plaintiff stated that she no longer had headaches, but her neck was stiff. (Tr. 288). Dr. Theisen scheduled bilateral S1 transforaminal epidural steroid injections with Dr. Marcovitz, which he performed the next month. (Tr. 283-84, 289).

Plaintiff presented to Dr. Theisen in April 2007 and reported that her left leg was feeling significantly better and her tail bone pain was no longer constant or as

severe, but that her right leg still hurt. (Tr. 287). Dr. Theisen continued Plaintiff's medications. (Tr. 287). Plaintiff returned to Dr. Theisen in June 2007 with complaints of increased pain during the previous two weeks. (Tr. 318). Dr. Theisen continued plaintiff's medications. (Tr. 318).

Plaintiff presented to Dr. Marcovitz a few days later for a caudal epidural steroid injection. (Tr. 316). Plaintiff reported to Dr. Marcovitz that the prior injection eliminated the band of pain across her lower back and in the left leg, but only minimally relieved her right leg pain. (Tr. 316). Plaintiff also complained of right leg fatigue. (Tr. 316). Plaintiff reported to Dr. Theisen in August 2007 that the steroid injection helped considerably with her tail bone and left leg pain, but did not alleviate her right leg pain. (Tr. 315).

In October 2007, plaintiff presented to Dr. Marcovitz for a caudal epidural steroid injection and a mid-lumbar trigger point injection to treat tenderness over the left middle to upper lumbar region. (Tr. 309-10). Plaintiff presented to Dr. Theisen later that month with recurrent complaints of leg pain and reported that maintaining any position for too long aggravated her pain. (Tr. 314). Dr. Theisen prescribed Vicodin and OxyContin, which another doctor in Dr. Theisen's office refilled in December 2007. (Tr. 308, 314).

In December 2007 and November 2008, plaintiff presented to Dr. Silverman with complaints of recurrent headaches. (Tr. 311, 320). Dr. Silverman performed

right C2, C3, and C4 cervical facet joint rhizolysis procedures.  (Tr. 320).  In

February, May, and November 2008, Dr. Marcovitz performed caudal epidural

steroid injections, a paravertebral thoracic trigger point injection, and a left lumbar

paravertebral trigger point injection.  (Tr. 301, 312, 322-23).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

 B. <u>Governing Law</u>

 The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    Analysis

    Plaintiff argues that the ALJ failed to properly assess her credibility and the

Commissioner asserts that the ALJ's assessment is supported by substantial

evidence.  The ALJ's credibility finding is entitled to deference and should not be

disregarded given the ALJ's opportunity to observe the plaintiff's demeanor.

However, if the ALJ rejects the testimony of the plaintiff as not being credible, the

ALJ must clearly state the reasons for that conclusion.  *Felisky v. Bowen*, 35 F.3d

1027, 1036 (6th Cir. 1994).  The residual functional capacity circumscribes "the

claimant's residual abilities or what a claimant can do, not what maladies a

claimant suffers from-though the maladies will certainly inform the ALJ's

conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276

F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not

affect his or her functional capacity to do work.  One does not necessarily establish

the other."  *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich.

2004).  "The regulations recognize that individuals who have the same severe

impairment may have different [residual functional capacities] depending on their

other impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*,

217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Not all

impairments deemed "severe" in step two must be included in the hypothetical. *Griffeth*, 217 Fed.Appx. at 429. "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey*, 987 F.2d at 1235. This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

SSR 96-7p also provides guidance on the factors to be considered when evaluating credibility:

> Assessment of the credibility of an individual's

> statements about pain or other symptoms and about the
> effect the symptoms have on his or her ability to function
> must be based on a consideration of all of the evidence in
> the case record. This includes, but is not limited to:
>
> * The medical signs and laboratory findings;
>
> * Diagnosis, prognosis, and other medical opinions
> provided by treating or examining physicians or
> psychologists and other medical sources; and
>
> * Statements and reports from the individual and from
> treating or examining physicians or psychologists and
> other persons about the individual's medical history,
> treatment and response, prior work record and efforts to
> work, daily activities, and other information concerning
> the individual's symptoms and how the symptoms affect
> the individual's ability to work.

The adjudicator must then evaluate all of this information and draw appropriate

inferences and conclusions about the credibility of the individual's statements. *Id*.

In addition, the ALJ, in commenting on plaintiff's credibility as it relates to

pain symptoms, must follow the requirements of, among other provisions, 20

C.F.R. § 404.1529 as well as SSR 96-7p, which provides, in part:

> In recognition of the fact that an individual's symptoms
> can sometimes suggest a greater level of severity of
> impairment than can be shown by the objective medical
> evidence alone, 20 CFR 404.1529(c) and 416.929(c)
> describe the kinds of evidence, including the factors
> below, that the adjudicator must consider in addition to
> the objective medical evidence when assessing the
> credibility of an individual's statements:
>
> 1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

The ALJ did not even question plaintiff about many of these factors and certainly did not explain why he did not take many of them into account in assessing plaintiff's credibility and impairments.  The ALJ did not fully address the side effects of plaintiff's medications, which include Percocet, Vicodin, Flexeril, and OxyContin.  Common side effects of both of these narcotic medications include drowsiness and dizziness.  While the ALJ said that medication side effects limited plaintiff to unskilled work, it is unclear how the ALJ reached such a conclusion, given that the side effects include drowsiness, dizziness, and the need to nap.  While the ALJ stated that the medical evidence showed that her need to nap was

more habit than necessity, she failed to explain what medical evidence indicated as such. The ALJ concluded that plaintiff's conditions could reasonably be expected to produce her symptoms, but did not find them credible because of the RFC assessment. After recounting plaintiff's extensive treatment, her worsening condition and symptoms, along with her need to increasing narcotic pain medications, the ALJ then concluded that she was "able to sustain concentration despite her pain medications to read frequently and intensively, as well as daily driving." Plaintiff described reading a "romance novel" every three days and how she often fell asleep while reading. Driving two miles to the post office each day also does not suggest that plaintiff can sustain unskilled work 8 hours per day, 40 days per week.

Moreover, the ALJ rejected Dr. Theisen's opinion that plaintiff was continued off work as conclusory and merely just a statement of the decision that is ultimately made by the Commissioner, yet did not rely on any other medical evidence opinion. The ALJ deemed the state agency examiner's opinion "tool old" because it was done in 2006 and the plaintiff's conditions had significantly worsened in the years since. Under § 404.1527(d)(2), a treating source's opinion may be rejected or given less weight where the "supportability" of the doctor's opinion is insufficient, § 404.1527(d)(3), or his opinion is not "consistent" with the record as a whole, § 404.1527(d)(4). *Id.* When reviewing the ALJ's reasoning for

this purpose, it is critical to remember that the Court is "reviewing the ... decision to see if it implicitly provides sufficient reasons for the rejection of [the treating source's] opinion ... not merely whether it indicates that the ALJ did reject [that] opinion." *Id.* The ALJ failed to explain how Dr. Theisen's opinion that plaintiff was unable to work was inconsistent with or unsupported by the record evidence as a whole, particularly her lengthy treatment records. An "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006), citing, *McCain v. Dir.*, *Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.").

More importantly, when evaluating the opinions of treating physicians, the ALJ must also consider, under some circumstances, contacting the treating source for clarification:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also* 20 C.F.R. § 404.1527(c), 20 C.F.R.

§ 404.1512(e); *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to

investigate the facts and develop the arguments both for and against granting

benefits.); *D'Angelo v. Soc. Sec. Comm'r*, 475 F.Supp.2d 716 (W.D. Mich. 2007)

(Where an ALJ discounts the opinions of a treating physician because the record

includes virtually no medical records of plaintiff's treatment with that physician,

the ALJ should perform a further investigation pursuant to SSR 96-5p.).  The

regulation requires the ALJ to give good reasons for the weight given to the

treating source's opinion and, if this procedural requirement is not met, a remand

may be required even if the decision is otherwise supported by substantial

evidence.  *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th

Cir. 2004).  In this case, given Dr. Theisen's long-term and extensive treatment of

plaintiff's back and pain conditions, the ALJ was required to contact her to

determine the basis for her opinion that plaintiff was unable to work and obtain

from Dr. Theisen, more specific information and opinions about plaintiff's

functional limitations.  As the physician who prescribes plaintiff with multiple

narcotics, muscle relaxants, and other medications as well as oversaw her treatment

with other physicians and specialists, Dr. Theisen would also be able to

knowledgeably speak to their effectiveness and their side effects, including

plaintiff's need to nap a result.

D.    Conclusion

The District Court is permitted, pursuant to 42 U.S.C. § 405(g), to enter a judgment reversing the findings of the Commissioner and remanding for a hearing. In light of the above determination that the ALJ did not properly make findings relating to plaintiff's credibility, the assessment of her pain, and related treating physician evidence, it is recommended that the case be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration. *Faucher v. Secy of Health and Human Serv.*, 17 F.3d 171, 175-76 (6th Cir. 1994).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further review and investigation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

                                    s/Michael Hluchaniuk
Date: February 18, 2011             Michael Hluchaniuk
                                    United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 18, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Robert K. Gaecke, Jr., Francis L. Zebot, AUSA, Kenneth L. Shaitelman, AUSA, and Commissioner of Social Security</u>.

s/Darlene Chubb       
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Davis v. Comm'r*; Case No. 09-12505
